The last case for argument today is a tandem case, Papapietro v. Whitten Loan Servicing et al. in Popular Mortgage Servicing Company All right, Mr. Papapietro, you have five minutes, you reserved two minutes for rebuttal, so you have three minutes. Thank you, Your Honor. Good Afternoon, Mr. Papapietro, I am Ralph Franco with the Rosenberg Law Firm for Mr. Papapietro. Your Honor, this is a very lengthy and very fact-specific record, encompassing a number of years, and I'd like to spend my time focusing on the one issue, Your Honor, that I believe transcends all of the claims in this case, and that is the applicability of the equitable tolling doctrine to the claims brought forth by Mr. Papapietro. And I will start that argument, Your Honor, by indicating to the Court that the forced-place insurance bracket is what created the entire problem in this case, as Mr. Papapietro sets forth in his brief. Multiple times throughout the record, the lenders placed insurance at an exorbitant premium, which caused the problems with the loan being underwater, so to speak, at times when it was proven that insurance had been maintained on the property all along. It is the Court's failure to recognize the applicability of the equitable tolling doctrine to these various claims that we believe is the most significant issue facing the Court. And while clearly, Your Honor, we are bound by the record in this case, I don't think that we can be blind to the fact that the particular allegations, excessive late charges, sitting on payments, forced-place insurance, all of the allegations that Mr. Papapietro sets forth in his very specific brief, were the type of widespread conduct that caused this country to get into the mortgage crisis to begin with. Mr. Papapietro has diligently pursued his rights throughout. My understanding of the doctrine, and I understand that it does not apply in all cases, only in exceptional cases, there has to be a pattern of fraud, which I believe is clearly established on this record, Your Honors. Was this first payment late under the trial period plan agreement? This, Your Honor, is a question that I'm trying to determine myself. We have a claim here that the payment was two days late. Now, Mr. Papapietro in his papers indicates that on multiple occasions throughout the course of these proceedings with these parties, that payments had been sat on, so to speak. If we assume for the purposes of the argument, Your Honor, that the first of these three payments in 2009 was in fact two days late, I would ask this court to recall that we are on the equitable side of the courthouse looking at these cases. I'm sorry, and then I'm just going to ask, does your argument depend upon us finding that he was entitled to modification, even if that payment was late? I believe there's a question of fact on that issue, Your Honor. But then, there's a question of fact as to whether or not he was late, right, because there's that issue. But does your position rest on us finding that he was entitled to modification? Not necessarily, Your Honor, because I think that this, the crux of the case was decided on the statute of offenders in a court of equity is extremely relevant, just as the conduct of my client is relevant. My client diligently pursued rights, and if he, in fact, was two days late in the first of the modification payment, the equities of the situation should not mandate that that resolves the entire case against him. I'm not so sure that the court's decision hinged on that point. I think the court's decision glossed over the allegations that he made as not being supported by the record, Your Honor. And these are the exact allegations that had been raised en masse by numerous attorneys general over the course of the years in which these issues were occurring. Okay, we got it, Mr. Frank. We have two minutes, and we can amplify that if you wish. So we have the counsel now for, I don't know who's going first here. Mr. Slipakoff? That's correct, Your Honor. Good morning. Brian Slipakoff on behalf of AQUIN and Litton Loan Servicing. Your Honors, there is no ambiguity in the record as to whether the payment was late. If you look at special appendix page 139, that's the Western Union receipt that Mr. It shows that the payment was made on 12-3-2009. I do appreciate you answering that question. Can you speak to anything aside K-Mark for the proposition that you have to pay an improper fee in order to have standing to challenge it? I have to say that that sounded off to me. Well, I think the issue, Your Honor, is that what K-Mark says, and to answer your question, I don't know of any additional authority besides K-Mark. I'm happy to take a look and submit a letter if the court would like. But what K-Mark says is that while the fees are on the account, that's not an injury. The injury has to be some damage to the borrower. And if there's no payment, then it's a speculative injury. I believe that the stress and the hassle of getting it settled is an injury. I just, I don't understand if a debtor can't afford to pay an improper fee, and therefore does not pay it. How, under your theory, or how your read of K-Mark, they could ever challenge it? Well, I think to take a step back, first there's obviously the antecedent issues of whether or not a breach of contract claim to what this issue relates would even be properly lodged against Aquin and Litton, given that they were servicers on behalf of the mortgage holder. That's another question I've got. Agreed, agreed. Except with the first one. Sure, certainly, Your Honor. I understand what Your Honor's saying, but I think the issue is that, especially in a case like this, where there's no dispute that before Aquin and Litton ever were touching this account, that it was thousands of dollars in negative escrow. In this case, this loan was deeply in default. I'm so sorry, maybe I'm not being clear. I would like some help understanding what I think is your theory, which is if somebody cannot afford to pay an improper fee, your argument as I understand it, is that they don't have standing to challenge it if they don't pay it, because they can't afford to pay it, even if it's improper. Is that what you are asking us to adopt? Well, I think that, Your Honor, under the FDCPA, it depends on what theory you're talking about, Your Honor. If you're talking about the FDCPA, then sending a notice that this fee is on your account, that could arguably be a violation of the Fair Debt Collection Practices Act. If you're talking about just a breach of contract claim, then in the event that there's a fee on the account that shouldn't be on there and foreclosure is pursued because of that, the borrower can defend or some action to enforce the obligation. The borrower can defend by saying, I wasn't in default. This fee was improper. So the borrower can raise that. It's just a question of, in terms of a sort of offensive breach of contract action. I don't believe that that's an actionable theory. All right, thank you. Thank you, Your Honors. We now hear from Mr. Eisenberg. Good afternoon. Just to be clear, the appeal that I'm dealing with is an appeal from a separate and independent order that was entered by Judge Towns prior to the order that involved Litton and Oswin. And that order, the grounds for the dismissal on that order was solely on the statute of limitations. And it's indisputable that absent equitable tolling, the claims for relief asserted in the plaintiff's complaint are barred by the statute of limitations. So the only way that the plaintiff can potentially have a viable cause of actions is if the statute of limitations is equitably tolled. So let's address the equitable tolling issue. The appellant's claim that the statute of limitations should be equitably tolled until 2012 when the plaintiff appellant received a mortgage servicing history from Oswin. And at that time, he first learned of the facts giving rise to the claims for relief. The problem with that- Were the payments a mistake on your part, or was Mr. Puppetro incorrect that he was properly insured? Were these forced placed insurance, were they a mistake on your part, or was he properly insured? It's a very, very long history here. I do recall in the record that there was one letter from the bank that said we did make a mistake and we've corrected it. But I think the history of the statements here show that there were multiple mortgage late payments, nonpayment, late fees. There were a lot of problems with the mortgage. And I think going to the point of equitable tolling, because the court never reached the substance of the claims. And there was no reason to reach the substance of the claims. And that's because it is indisputable that the appellant was fully aware of the facts giving rise to his claims for relief. In 2006 through 2008, when in fact the plaintiff appellant was receiving these statements and griping about it and saying, hey- Was he griping to the right person? I think the difference, the relationship between loan servicers and mortgage agreements, and he was a mortgage provider, I mean, is there, is some of what was going on, was that it's very confusing to know who he should have sued and who he should have complained to? I don't think it's very confusing, and in fact, the plaintiff appellant knew who to complain to. Because in 2008, the plaintiff appellant wrote letters to the New York State Attorney General and the Pennsylvania State Attorney General and said, hey, there's mortgage proprieties here. There's first place insurance improper. There are late fees improper. They're not getting the proper application of payments. And so not only did he gripe about them, he complained about them to governmental agencies. And in fact, the governmental agencies responded and said there are no new proprieties here. All right. In addition- I think your time is up, Mr. Eisenhower. Oh, time's up? Yeah. Thanks. Yeah. Mr. Franco, you have two minutes to move on. Thank you, Your Honor. Your Honor, it is my belief that the record will establish in each of the cases where the first place insurance was, in fact, placed, that it was incorrect. Insurance had been in effect at all times. It is the conduct of the defendants, Your Honor, that primarily warrant the equitable tolling applicability here. And it must be understood that the first place insurance is not a fair product for the value. These insurance premiums are two, three, four, five times what typical insurance- Why should he get equitable tolling if he was aware of it in 2008 and complaining of it to government agencies? Why should he get equitable tolling? Because there were multiple periods of time, Your Honor, throughout these years that my client was trying to work with the bank, believing that the banks were negotiating in good faith with him, but their deceptive practices continued, Your Honor. It's the deceptive practices aspect of what the banks were doing that I believe is primarily why the equitable tolling doctrine should apply. My client was more than diligent, Your Honor, as principally evidenced by the fact that I'm standing here before this panel. He pursued his rights multiple times along the way. As early as 2010, I believe the record will support. There's a lengthy procedural history in this case. The court's point is well taken that it's very difficult sometimes to determine who it is I'm dealing with when multiple, multiple different parties have come into play. In his deposition, Your Honors, he in essence said, I contracted with a party and I paid the loan that I believe I had contracted with. All of the problems, again, started with the initial, I believe it was Poplar, and initially with the forced place insurance that created the upside down circumstances. This is his home, would you feel? That is correct, Your Honor. And is he still living in there? I believe that he is, Your Honor. And is he still paying his mortgage? The state action, my understanding is, Your Honor, the state action is about to be dismissed. It's a little unclear why. My understanding- What do you mean the state action? The underlying Pennsylvania foreclosure action. That is my understanding, Your Honor. I know throughout the period of time- Okay, there's been foreclosure litigation for home. That's correct. This is going back, I want to say, Your Honor, I believe it's going back to 2015. And has he been making his mortgage payments since then? He was paying throughout the periods of time relevant. In this case, Your Honor, subsequent to the record here, I'm not certain. I'm not certain of what the record establishes in the underlying- So the record shows he made his most recent payment when? I believe it was 2015 or 16, Your Honor. It was 22 payments after that modification period when it went down to the 1550 that he continued to pay throughout that period of time. Many of those payments were rejected. Some of those payments were accepted. And do we know since 1515, has he been paying? I don't believe he has been paying subsequent to that point in time, Your Honor. On the periods- That point in time being 1515? Yes, outside of this record. Yes, Your Honor, I believe that is correct. That is my understanding. Thank you, Mr. Franco. Thank you, Mr. Franco. We will reserve decision. The last case on the calendar, Morales v. City of New York, is on submission. So that completes the business of the court. And with thanks to Ms. Beard, I ask for the adjournment of the court. The court stands adjourned.